Filed 10/23/12 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2012 ND 224

In the Matter of the Application for Disciplinary 

Action Against Alan M. McDonagh, A Member of

the Bar of the State of North Dakota

Disciplinary Board of the Supreme Court, Petitioner

v.

Alan M. McDonagh, Respondent

Nos. 20120237 & 20120238

Application for Discipline.

DISBARMENT ORDERED.

Per Curiam.

Brent J. Edison, Assistant Disciplinary Counsel, P.O. Box 2297, Bismarck, ND 58502-2297, for petitioner.

Alan M. McDonagh, respondent; no appearance.

Disciplinary Board v. McDonagh

Nos. 20120237 & 20120238

Per Curiam.

[¶1] 
The Supreme Court has before it a Stipulation, Consent to Discipline, and Recommendations by the Hearing Panel of the Disciplinary Board recommending Alan M. McDonagh be suspended from the practice of law for three years, pay restitution in the amount of $8,000.00, and pay the costs of the disciplinary proceeding. We conclude there is clear and convincing evidence McDonagh violated N.D.R. Prof. Conduct 1.5, 1.15(a), 1.15(c), 1.15(d), and 8.4(c). We adopt the findings and the conclusions and recommendations regarding restitution and costs, but we conclude McDonagh’s violations compel disbarment as the appropriate sanction, and we therefore reject the recommended sanction. We disbar McDonagh from the practice of law.

I.

[¶2] 
Alan McDonagh was admitted to the Bar of the State of North Dakota on October 6, 1997. In May 2006, Roxanne Laughlin retained McDonagh to handle a family law matter. She made a $3,000.00 advance payment, which McDonagh failed to deposit in a client trust account. McDonagh failed to account for or return any unearned portion of the advance payment.

[¶3] In January 2009, McDonagh sought a $150,000.00 line of credit from Choice Financial. McDonagh intended to pledge some land as collateral, and knew Choice Financial would require an attorney other than him to do the title opinion. Nevertheless, McDonagh created the preliminary and final title opinions, made the documents appear as if they were created by another attorney, Ryan Norrell, on what appeared to be Norrell’s letterhead, and forged Norrell’s signature on both the preliminary and final title opinions.

[¶4] McDonagh was a co-owner of Biliske & Merrill Real Estate Marketers, L.L.C. with Allen Merrill, Dennis Biliske, and Walter Bruns. A new entity was formed, Biliske and Merrill Land Sales, L.L.C., owned by McDonagh, Biliske, and Merrill. Bruns was not an owner of this entity. At the time of the formation of the new business, there were two sales pending from the former entity. The proceeds of that sale were distributed to Bruns’ attorney, who gave McDonagh a check for $34,231.18 representing McDonagh’s, Biliske’s, and Merrill’s commissions for the sale. McDonagh deposited the check in the trust account for Biliske and Merrill Land Sales, and wrote checks to himself for $10,000 and $3,000. McDonagh told Biliske and Merrill he had not received payment, and repeatedly denied he had received payment from July 2010 through the spring of 2011. After Biliske and Merrill learned McDonagh misapplied the funds, they entered into transactions with McDonagh to recover their shares of the funds.

[¶5] In May or June 2011, McDonagh admitted to Ralph Carter, a senior partner at Carter McDonagh and Sandberg, that as managing partner of the law firm he had used client retainers to pay firm expenses rather than depositing them into a client trust account. McDonagh admitted he had misapplied $28,448.00 in client funds from nineteen clients, and gave the law firm a check for that amount along with a list of clients entitled to trust account refunds or adjustments. After this admission, it was discovered that McDonagh had misapplied $21,500.00 in funds from six other clients. Two of them, Roxanne Laughlin and Bruce Voelker, were entitled to refunds.    

[¶6] A Petition for Discipline was filed against McDonagh alleging he violated N.D.R. Prof. Conduct 1.15 (safekeeping property) and 8.4 (misconduct) and N.D.R. Lawyer Discipl. 1.2 (grounds for discipline) for misapplying client retainer funds, forging another attorney’s signature, and misapplying the proceeds of land sales. McDonagh answered the petition by substantially admitting the allegations, but denying criminal conduct. McDonagh requested a hearing in mitigation. While the first petition was pending, a second petition for discipline was filed alleging McDonagh violated N.D.R. Prof. Conduct 1.5 (fees) and 1.15 (safekeeping property) for misapplying client funds. We placed McDonagh on interim suspension on June 10, 2011.

[¶7] McDonagh and Disciplinary Counsel entered into a Stipulation and Consent to Discipline. In the stipulation, McDonagh admitted to the conduct in question. The stipulation recommended McDonagh be suspended from the practice of law for three years, pay $8,000.00 in restitution, work to wind down the partnership with his former partners, refund any other client funds required to be refunded, and pay the costs of the disciplinary proceeding. The Hearing Panel convened to consider the matter, and accepted the stipulation and adopted its recommendation for discipline. On July 18, 2012, we directed the issue of appropriateness of the sanction be briefed and heard.

 II.

[¶8] “Disciplinary proceedings are reviewed by this Court de novo on the record.” 
Disciplinary Board v. Buresh
, 2007 ND 8, ¶ 6, 726 N.W.2d 210. We give due weight to the findings, conclusions, and recommendations of the hearing panel, “but this Court does not act as a rubber stamp.” 
Id.
 “Each disciplinary matter must be considered on its own facts to decide which sanction, if any, is appropriate.” 
Id.

[¶9] Disciplinary Counsel argues the sanction of suspension from the practice of law for three years was appropriate in this case. “The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.” N.D. Stds. Imposing Lawyer Sanctions 1.1. The purpose of the standards is threefold: to promote (1) consideration of all relevant factors, (2) consideration of the appropriate weight of each factor, and (3) “consistency in the imposition of disciplinary sanctions for the same or similar offenses within and among jurisdictions.” 
Id.
 at 1.3. When determining the appropriate sanction, a court considers four factors: the duty violated, the lawyer’s mental state, any potential or actual injury caused by the misconduct, and any mitigating or aggravating factors. 
Id.
 at 3.0.

[¶10] The North Dakota Standards for Imposing Lawyer Sanctions establishes presumptive sanctions based on the state of mind of the attorney and the conduct involved. Standard 4.1 establishes the presumptive sanction for “Failure to Preserve the Client’s Property.” Under Standard 4.11, “[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.” According to Standard 4.12, “[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.” “Knowledge” is defined as “the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.” 
Definitions
, N.D. Stds. Imposing Lawyer Sanctions. McDonagh violated N.D. R. Prof. Conduct 1.5(a) for collecting fees not earned, and N.D. R. Prof. Conduct 1.15(a), (c), and (d) for failing to safekeep client property. McDonagh’s state of mind, as stipulated to, was “knowingly.” By depositing client funds in the firm’s operating account and using the funds to pay operating expenses, McDonagh knowingly converted client property causing potential injury to his clients. The appropriate presumptive sanction for McDonagh’s trust account violations is disbarment under Standard 4.11.

[¶11] Standard 5.1 establishes the presumptive sanction for “Failure to Maintain Personal Integrity.” Standard 5.11 gives two situations in which disbarment is the presumed sanction: (1) when “a lawyer engages in serious conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; . . .” or (2) when “a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer’s fitness to practice.” Under Standard 5.12, “[s]uspension is generally appropriate when a lawyer knowingly engages in conduct which does not contain the elements listed in Standard 5.11 but that seriously adversely reflects on the lawyer’s fitness to practice.” “Intent” is defined as “the conscious objective or purpose to accomplish a particular result.”  
Definitions
, N.D. Stds. Imposing Lawyer Sanctions. 

[¶12] McDonagh violated N.D.R. Lawyer Discipl. 1.2A(3) and N.D.R. Prof. Conduct 8.4(c) for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation that reflects adversely on the lawyer’s fitness as a lawyer. Specifically, McDonagh forged the two title opinion documents, and repeatedly lied about a land commission check. The stipulation specified McDonagh’s state of mind as “knowingly,” and stated presumed sanctions under Standard 5.12, rather than Standard 5.11. McDonagh’s conduct, especially the forgery, was intentional. McDonagh created preliminary and final title opinions on letterhead he created in the name of another attorney, and forged that attorney’s signature on the title opinions. The difference between “knowledge” and “intent” is a “conscious objective or purpose to accomplish a particular result.” 
Definitions
, N.D. Stds. Imposing Lawyer Sanctions. McDonagh’s forgery intended to deceive the bank in order to obtain a line of credit. The appropriate presumptive sanction for McDonagh’s forgery and deceit is disbarment under Standard 5.11.  

[¶13] The North Dakota Standards for Imposing Lawyer Sanctions list aggravating and mitigating factors to consider when determining an appropriate sanction. 
See
 N.D. Stds. Imposing Lawyer Sanctions 9.1-9.3.  The mitigating factors in this case are: absence of prior disciplinary record, timely good faith effort to make restitution or to rectify consequences of misconduct, cooperation with the proceedings, character or reputation, and remorse. The aggravating factors are: dishonest or selfish motive, a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. 

[¶14] Disciplinary counsel argues there must be an incentive for attorneys to admit violations, cooperate in the disciplinary process, and take steps to undo the damage they have caused. We agree. As a result, disciplinary counsel further argues that McDonagh’s cooperation and restitution outweighs the seriousness of his violations and the presumptive sanction of disbarment. We disagree. For example, in 
Disciplinary Bd. v. Mahler
, the disciplinary board recommended an attorney be disbarred for a trust account and fee violation. 2012 ND 124, ¶ 1, 819 N.W.2d 489. Mahler deposited a $2,500.00 retainer into his operating account rather than into a trust account, and spent the retainer money before any fees were earned. 
Id.
 at ¶ 3. He also charged a higher fee than agreed to, and failed to diligently represent the client. 
Id.
 Mahler admitted the underlying facts and consented to discipline. 
Id.
 at ¶ 5. We rejected the recommended sanction of disbarment, ruling it was “inconsistent with and disproportionate to discipline imposed in similar circumstances.” 
Id.
 at ¶ 8. 

[¶15] In this case, the recommendation was a three year suspension for much more serious violations than Mahler’s by an attorney who also admitted the violations and cooperated with the investigation. While it is important to promote cooperation and restitution, the protection of the public and the profession is paramount. We must weigh the seriousness of McDonagh’s violations and be consistent in the imposition of disciplinary sanctions for the same or similar violations. McDonagh engaged in a very serious pattern of deceit, including forging documents, lying to business associates, and misapplying client funds. In this case, the aggravating factors outweigh the mitigating factors, and disbarment is the appropriate sanction.

III.

[¶16] ORDERED, that the Stipulation, Consent to Discipline, and Recommendations by the Hearing Panel is accepted as to the findings and as to restitution and costs, but rejected as to the recommended sanctions. Alan M. McDonagh is DISBARRED from the practice of law. McDonagh must pay restitution to Bruce Voelker in the amount of $5,000.00, and to SBAND’s Client Protection Fund in the amount of $3,000.00 to reimburse amounts paid to Roxanne Laughlin.

[¶17] IT IS FURTHER ORDERED, any reinstatement is governed by N.D.R. Lawyer Discipl. 4.5.

[¶18] IT IS FURTHER ORDERED, that McDonagh must comply with N.D.R. Lawyer Discipl. 6.3 regarding notice.

[¶19] IT IS FURTHER ORDERED, McDonagh must pay the costs and expenses of these disciplinary proceedings in the amount of $2,500.00 within 60 days of the judgment, payable to the Secretary of the Disciplinary Board, Judicial Wing, 1st Floor, 600 East Boulevard Avenue, Bismarck, ND 58505-0530.

[¶20] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

Daniel J. Crothers

Dale V. Sandstrom